ESTATE OF WM. K. SHAFFER v. THOMAS McKANNA.

1. WRITTEN CONTRACT *Changed by Subsequent Parol Agreement.* M. and S. entered into a written contract for S. to deliver to the possession of M. certain cattle at Ellsworth, Kansas, on the payment to S. by M. of a stipulated price per hundred gross weight. Subsequently, M. and S. entered into a parol agreement that H. & Co., of Kansas City, Mo., were to sell the cattle on commission for M., after the delivery to him, and that S. would accept the drafts of H. & Co. for the cattle. Another firm, acceptable to M., was willing to handle the cattle for $50 less; but as S. preferred H. & Co., the arrangements were concluded with H. & Co. *Held,* Such subsequent parol agreement changed the written contract, by providing for payments in drafts instead of money, and that it was based upon sufficient consideration.

2. ——— *Default.* A portion of the cattle were delivered to M., and H. & Co.'s draft accepted by S. for the cattle; H. & Co. refused to pay the draft on presentation, but afterward the matter was settled and compromised by them with S., at a loss to S.; thereafter S. refused to accept the drafts of H. & Co., or checks or drafts upon H. & Co., for the cattle. *Held,* That S. was not justified in his refusal, as the firm was entirely solvent; and further, *held,* that M. was not in default so long as he tendered to S., in accordance with the parol agreement, the drafts of H. & Co.

*Error from Russell District Court.*

ACTION brought by *McKanna* against *Eastland*, as special administrator of the estate of Wm. K. Shaffer, deceased, to recover $3,000, with interest at seven per cent. per annum from August 30th, 1873. Trial at the October Term, 1878, of the district court, and verdict and judgment for the plaintiff. The defendant brings the case here. The nature of the action, and the facts, appear in the opinion.

*W. G. Eastland,* and *McClure & Humphrey,* for plaintiff in error.

*H. L. Pestana,* and *C. A. Hiller,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by Thomas McKanna against W. G. Eastland, special administrator of the estate of Wm. K. Shaffer, deceased, to recover $3,000, with interest at seven per cent. per annum from Aug. 30th, 1873. It appears from the record that on the latter date the following written memorandum and agreement was executed, at Ellsworth, by Thomas McKanna and Wm. K. Shaffer, to wit:

"Know all men by these presents, that I, Thos. McKanna, have this day bought of William K. Shaffer, nine hundred head of beeves, branded No. 21, to be delivered at the cattle-yards in Ellsworth, Kansas, and weighed there; to be taken in three lots, inside of forty-five days from to-day ; and for which I agree to pay said Wm. K. Shaffer two dollars and fifty cents per hundred gross weight, and for which I am to pay for on receipt of cattle. I have given said Wm. K. Shaffer three thousand dollars acceptance on D. W. Powers & Co., said acceptance to be forfeited in case I fail to receive and pay for said cattle."

The cause of action presented by the pleadings was, that Shaffer, in his lifetime, failed to carry out the terms and conditions of the said written agreement as modified by a parol agreement, and was therefore indebted to McKanna in the sum of $3,000 and interest.

On the part of McKanna, it was claimed that subsequent to the execution of the written agreement there was a parol agreement between the parties to the contract, by which Shaffer was to receive in payment for the cattle checks or drafts on Hunter, Patterson & Evans, a firm in Kansas City, Missouri.

Upon the trial, the court instructed the jury, among other matters, as follows:

"This case is (in a nutshell), shall the plaintiff McKanna

recover back the $3,000 advanced to the deceased Shaffer in his lifetime, on the cattle contract in question ? In order to a just decision of this matter between the parties, it will be necessary for you in the first place to decide what this contract of the sale and purchase of the cattle was, in all its terms. This is the foundation and basis upon which the whole superstructure of this case rests.

"Counsel have admitted that there is no material dispute between them as to what this contract was, save and except upon the question as to how, or in what way the cattle were to be paid for — the plaintiff claiming that the agreement was that the payment should be made absolute in checks or drafts of plaintiff on the cattle commission firm named, of Kansas City, while the defendant claims that it was to be in cash.

"Now both sides have introduced testimony on this agreement, outside of the writing signed by the parties — not to contradict the writing, but to explain it.

"It is a rule of law, that in transactions of this kind the giving of a check or draft is not a payment until such paper is honored and paid, unless the parties shall agree at the time that it shall be full payment, and that the original debtor is discharged, the presumption of law being that it is not a full payment. It devolves upon the party claiming it to show by the weight of the testimony that it was taken as a full payment and discharge. This presumption, as well as the other facts and circumstances in the case, you can consider on this point as to what the probable agreement was.

"But if you do not find that the plaintiff was to be discharged from liability on those drafts or checks, and you find and believe that the agreement was, that upon the delivery of the lots of cattle, checks or drafts of plaintiff were to be given, drawn on Hunter, Patterson & Co., and that Shaffer was to receive them, and collect them, or try to collect them, against said firm, and if they should not be paid, that the plaintiff would still be liable upon them, then this would be just as well for the plaintiff, and under these circumstances the plaintiff would be entitled to recover this $3,000 and interest; for by all of the testimony, on both sides, Shaffer refused to deliver the second lot of cattle without cash down, or what he would call cash. He would not receive the checks.

"So, if you shall believe the agreement was, that he was to take checks or drafts in the outset, and try to collect on

this house in Kansas City, to which it seems they all knew these cattle should be shipped, then there is a breach on Shaffer's part, and therefore, as I said, the plaintiff is entitled to recover, and you need not look farther in the case; and under these circumstances you should find for the plaintiff for the $3,000, with interest at the rate of seven per cent. per annum on this sum from the date you shall find that Shaffer made said breach, up to this date.

"On the terms of the contract, there is no dispute here by the parties, but that Shaffer was to be paid before delivery. The dispute is, you see, how should he be paid, or in what way or manner?

"Now, on the other hand, if you shall find and believe that the understanding and agreement was, that McKanna was to pay cash on delivery of the cattle, or it was so left that Shaffer had the right to say in what way the payment should be made, then of course Shaffer had the right to demand cash, and was not obliged to receive checks or drafts at all, unless he had a mind to. If, under these circumstances, McKanna should have failed or refused, and was not able to pay cash, or satisfy Shaffer in that which was as good as cash, or in some other way of payment; at the required and proper time, then there was a failure to perform on McKanna's part."

The jury found specially, that by the terms of the contract, it was agreed between the parties that the payment for the cattle was to be in checks or drafts; and that the breach of the contract was committed by Wm. K. Shaffer. A verdict was returned against the estate for $4,055.83.

Counsel for the estate of Wm. K. Shaffer claim, that the evidence fails to establish any subsequent change of the written contract between the parties; and second, that the alleged subsequent parol agreement, if proven, was without consideration, and void, and therefore that the instructions quoted were irrelevant and misleading. The evidence in regard to the subsequent parol agreement was substantially as follows:

John Howard testified that he—

"Was in Kansas City about October 1st, 1873, and there heard a conversation between Thomas McKanna and Wm. K. Shaffer. McKanna said he wanted to take three hundred head of the cattle at one shipment. Shaffer said for us to go

and get them and he would meet us at Ellsworth, Kansas, and deliver the cattle to us. The payment of the cattle was first talked of at Kansas City. McKanna said he could check on Hunter, Evans & Co., Kansas City, for the payment of the cattle. Shaffer said that they were as good as he wanted. McKanna told him that there was another firm who would handle the cattle for fifty dollars less, but Shaffer preferred Hunter, Evans & Co. After this conversation, Mr. McKanna and I went to Ellsworth and selected out of Shaffer's herd three hundred head of cattle. Shaffer's hands drove the cattle to Ellsworth. Shaffer met us at Ellsworth (I mean Mr. McKanna and myself), and delivered the cattle to McKanna. McKanna and I helped to put the cattle on the cars at Ellsworth, Kansas. I stayed with the cattle, and Shaffer and McKanna went to the bank for the purpose of giving a check for the cattle. McKanna came back to where I was, and said to me to take the cattle to Kansas City and deliver to Hunter, Evans & Co. I came with the cattle to Kansas City, and turned them over to Hunter, Evans & Co. I was in the employ of McKanna in handling these cattle."

Thomas McKanna, the plaintiff below, testified:

"I made an arrangement with Hunter, Patterson & Evans, commission men of Kansas City, to handle cattle for me, and allow me to check on them and to pay my drafts upon them. They were perfectly solvent and responsible. I heard a conversation between Wm. K. Shaffer and R. D. Hunter, of the firm of Hunter, Patterson & Evans, about the 1st or 2d day of October, 1873, at the fair grounds in Kansas City. Shaffer asked Hunter if McKanna's checks on his firm would be all right. Hunter said, yes, that they were going to handle the cattle. Shaffer then said to Hunter, 'That is all right; that is as good as I want. Drafts on you are as good as I want.'"

There was also testimony that McKanna was living in Leavenworth county, and went to Ellsworth for the purpose of this cattle business; that the first and only lot of cattle delivered by Shaffer to McKanna was turned over to McKanna in September, 1873, at Ellsworth, and that Shaffer accepted in payment a draft drawn September 22d, 1873, by William Hunter, to the order of W. K. Shaffer upon Hunter, Patterson & Evans.

This testimony was sufficient to go to the jury, and, if believed, to sustain the finding of a supplemental agreement regarding the payment of the cattle. Certainly, the parties could have made the giving of the drafts serve as the absolute payment of the cattle if they had so chosen. The testimony shows that the draft accepted for the first lot of cattle was drawn by Hunter upon Hunter, Patterson & Evans, payable to the order of Shaffer.

In Parsons on Notes and Bills, vol. 2, 156, it is stated that "When, at the time of sale, or of the contracting of a debt if the note of a third person be given, the presumption would seem to be that it was intended as payment absolutely, by the understanding of the parties, unless evidence can be introduced to show that it is merely conditional payment, or a collateral security for the debt." If, however, it could be held that the testimony failed to establish that Shaffer agreed to accept drafts or checks in absolute payment, yet tended to prove that he was to receive the drafts and attempt their collection from the firm of Hunter, Patterson & Evans, the judgment cannot be reversed on any objections of the plaintiff in error, which we are now considering, because it is agreed by all parties that Shaffer refused drafts and checks for the second lot of cattle for any purpose, whether conditional or absolute. Nothing but cash, or at least current money, was acceptable.

The subsequent parol agreement cannot be said to be void, as being without consideration. McKanna could have had another firm than Hunter, Patterson & Evans handle the cattle for the sum of fifty dollars less, yet we may fairly infer from the testimony that the drafts of Hunter, Patterson & Evans were preferred by Shaffer, and therefore that firm were allowed to handle the cattle at a loss of $50 to McKanna, owing to the arrangements between McKanna and Shaffer subsequent to the date of their written contract.

It is further contended by counsel of plaintiff in error, that if the parties had, by a subsequent parol agreement, changed their contract to accept drafts for payment instead

of money, that Shaffer had a clear and undisputed right to refuse any further acceptance of drafts after Shaffer had ascertained they would not be paid on presentation, or after he had sustained a loss on the paper given for the first lot of cattle. In support of this view, the following instruction was requested:

"If the jury believe from the evidence, that the defendant, Wm. K. Shaffer, agreed to receive checks or drafts on Hunter, Patterson & Evans in payment for the cattle mentioned in the contract, and did receive a check or draft in payment for the first lot of cattle, and said check or draft was not promptly paid on presentation, then the defendant was justified in refusing payment of the second lot of cattle in checks or drafts on said Hunter, Patterson & Evans."

The instruction was refused, and we think properly. The draft accepted on the delivery of the first lot of cattle was transferred without indorsement. If it was accepted as absolute payment, the mere dishonor of the paper did not revive the original debt or consideration, or in any way give Shaffer a remedy against McKanna. If the draft was merely received as a conditional payment, and Shaffer was bound to collect it, or attempt its collection, the mere refusal to pay did not place the parties in the same condition as if the bill had never been given. All the testimony proves that Hunter, Patterson & Evans were responsible and solvent. The loss sustained by Shaffer on the draft seems to have been the result of some compromise or settlement by Shaffer with that firm, for which McKanna was in no way responsible or liable. Neither did it grow out of any inability of the firm to pay the draft, nor of any supposed or anticipated insolvency. If Shaffer had agreed to accept drafts or checks for the cattle, either absolutely or conditionally, the difficulties attending the collection of the first draft (very blindly shown in the record) did not justify his refusal to accept other like drafts, so long as they were drawn on the firm he preferred to handle the cattle, and the firm was entirely solvent. Some of the closing instructions of the court might be criticised, but we do not deem them sufficiently prejudicial to cause the reversal of the judgment.

The facts testified to on the part of the plaintiff below, show that said plaintiff was not the defaulting party, and, upon the pleadings, he had the right, if the jury credited his witnesses, to recover back the $3,000 advanced as a forfeit.

We can perceive no error prejudicial to the plaintiff in error in the record, and therefore the judgment must be affirmed.

All the Justices concurring.